# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALEXANDER HARRIS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:22-cv-02489-HLT** |
| **UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, SECRETARY OF,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Alexander Harris brings this pro se action against the Secretary of the Department of Veterans Affairs ("VA").[1] He was an employee of the Veterans Affairs Medical Center ("VAMC"), working in Topeka, Kansas. Plaintiff was a whistleblower. He voiced many concerns about VAMC's training, record-keeping, and disciplinary actions. He also raised concerns about the practices of VAMC Police Chief Andrew Denning. Plaintiff was involved in an incident in the Emergency Department on June 21, 2019, where Plaintiff's use of force was questioned. Plaintiff claims that he was targeted, harassed, discriminated against, and retaliated against before and after this incident.

Plaintiff seeks relief under four legal theories based on four events. The legal theories are (1) race-based discrimination under Title VII, § 1983, and 29 C.F.R. § 1614.101(b); (2) retaliation for whistleblowing under Title VII; (3) workplace harassment because of whistleblowing; and (4) disability discrimination and failure to accommodate under the Rehabilitation Act of 1973,

---

[1]   The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

29 U.S.C. § 791. The events are (1) "From May 2019 through July 2019, [Denning], directed his secretary to watch [Plaintiff] and requested his co-workers to report negative information about [him]; subjected him to an investigation without telling him why; and issued [Plaintiff] a reprimand and subsequently rescinded it"; (2) Denning detailed Plaintiff to Engineering Service in Leavenworth on June 28, 2019; (3) Plaintiff learned he was being charged leave without pay ("LWOP") on September 6, 2019; and (4) Plaintiff received notice requiring a medical examination on September 9, 2019.

Defendant moves for summary judgment (Doc. 80). Plaintiff also moves for summary judgment. (Docs. 79, 82 (original and amended motion)). And Plaintiff seeks leave to file a surreply to Defendant's motion (Doc. 92). The Court denies Plaintiff's summary-judgment motion, amended motion, and request to file a surreply. The Court grants Defendant's motion because some of Plaintiff's claims are barred by the Federal Employees' Compensation Act ("FECA"), others are not administratively exhausted, and the uncontroverted evidence shows that Plaintiff fails to state a prima facie case for his remaining Title VII and Rehabilitation Act claims.

## I.      BACKGROUND

### A.      Preliminary Matters

Plaintiff's submissions generally fail to comply with the rules regarding summary judgment. The Court understands that Plaintiff proceeds pro se. This can be challenging, particularly when facing seasoned attorneys trained in the law. But the decision to proceed pro se does not relieve a litigant from the expectation that he will comply with the federal rules and the Court's local rules.

Here, Defendant filed its motion and included in its summary-judgment filings the required "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment." Doc. 80-1; *see also*

D. Kan. R. 56.1(f) (requiring "[a]ny represented party moving for summary judgment against a party proceeding pro se" to file this notice). The notice recites the applicable summary judgment rules and advises Plaintiff that to oppose summary judgment he must submit evidence that counters the facts asserted by Defendant and establishes specific facts supporting his claims. Doc. 80-1 at 2-3. The notice further cautions Plaintiff that if he fails to respond to the motion with evidence contradicting Defendant's asserted facts, the Court "may accept [D]efendant's facts as true, in which event [Plaintiff's] case may be dismissed and judgment entered in [D]efendant's favor without a trial." *Id*.

Plaintiff does not specifically controvert any of Defendant's numbered statements of facts despite this notice. At times he tries; he repeatedly refers to exhibits that were attached to his complaint. But by and large, the exhibits either lack foundation, are unsupportive, refer to matters outside the legal claims in this case, or (for facts Plaintiff asserts) are controverted.[2] The Court again recognizes that Plaintiff proceeds pro se. But his pro se status neither excuses him from compliance with procedural rules nor shields him from the consequences of noncompliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). As noted above, this includes compliance with the District's local rules. *See Hamilton v. Dep't of Veterans Affairs*, 2016 WL 7326280, at *1 (D. Kan. 2016). The Court therefore deems Defendant's facts admitted for purposes of its summary judgment motion. *See* D. Kan. R. 56.1(a); Fed. R. Civ. P. 56(e)(2); *see also Kobel v. Dunkle*, 2018 WL 572053, at *2 (D. Kan. 2018); *Hamilton*, 2016 WL 7326280, at *2. Even so, the Court reviewed the record evidence cited by Defendant and confirmed that it supports the asserted facts.

---

[2]   Plaintiff's own summary-judgment motion suffers from the same maladies. Much of the response is a carbon copy of Plaintiff's motion. *Compare* Doc. 82 at 8-21 *to* Doc. 87 at 12-26. The same exhibits are referenced and the same statements are made without support.

The same problems plague Plaintiff's additional facts to oppose Defendant's motion and to support his own summary-judgment motion. His asserted facts are not separately numbered in concise paragraphs as required by the local and federal rules. Instead, each paragraph in his submissions is numbered regardless of whether the content is factual or legal. The paragraphs are not logically delineated, and at times it is difficult to discern whether he is asserting a fact or making an argument. The Court considered Plaintiff's properly supported and uncontroverted facts when evaluating the summary-judgment motions. But (as explained below) these facts are minimal and do not create a triable issue of material fact.

Plaintiff also requests leave to file a surreply. Plaintiff contends that Defendant improperly filed a reply brief to its summary-judgment motion. Plaintiff asks the Court to disregard Defendant's reply brief and allow him to file a surreply. The Court denies Plaintiff's motion. This District's local rules generally "do not provide for the filing of surreplies," but leave to file a surreply may be appropriate "where a movant improperly raises new arguments in a reply." *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1341 (D. Kan. 1997) (internal quotations omitted). Plaintiff does not identify any of Defendant's arguments that are new. And the Court finds none. Defendant was within its rights to file an optional reply brief. *See* D. Kan. R. 7.1(c) (providing for reply briefs).

Plaintiff appears to be confused because the Court set response deadlines for briefing but did not give any deadlines for reply briefs. But the Court set a new deadline for response briefs upon the motion for additional time filed by Defendant. The Court did not mention reply briefs because it was unnecessary. A reply brief to a summary-judgment motion is due 14 days after the response is filed absent other authority. Defendant timely filed its reply brief. There is no basis on which to disregard the brief or allow a surreply. Plaintiff's motion is denied. But, even if the Court

were to ignore Defendant's reply brief, the outcome of its summary-judgment motion would be the same.

**B.      Uncontroverted Facts[3]**

Plaintiff's allegations involve the following actors. The Court also identifies several acronyms that are used in the briefing, as well as the locations involved in Plaintiff's allegations. They are centralized here for ease of reference.

### 1.      The Actors, Acronyms, and Locations

- <u>Plaintiff Alexander Harris</u>: VA Police Major (Supervisory Security Specialist) with the Topeka Veterans Affairs Police Department. Plaintiff worked at the Topeka VAMC. Plaintiff identifies his race as Afro-American mixed.

- <u>EKHCS</u>: VA Eastern Kansas HealthCare System. The Topeka VAMC is one of two hospitals in EKHCS. The other one is in Leavenworth. EKHCS is part of the Veterans Integrated Services Network 15 ("VISN 15"), which covers a multi-state area.

- <u>Andrew Denning</u>: VA Police Chief who worked out of the Leavenworth VAMC. Denning was Plaintiff's supervisor.

- <u>Angela Feliciano</u>: Denning's secretary. Feliciano worked at the Topeka VAMC.

- <u>Michal Sterba</u>: EKHCS Training Sergeant and Ground Defense Recovery Instructor. Denning asked Sterba to review Plaintiff's June 21, 2019 use of force in the Emergency Department.

- <u>Shawn Eckhoff</u>: VA Police Lieutenant who was with Plaintiff in the Emergency Department on June 21. Plaintiff alleges that Eckhoff is White. The Court has no reason to doubt Plaintiff's statement, but Plaintiff has not attached admissible evidence demonstrating Eckhoff's race.

- <u>Joesph Mulford</u>: VA Police Officer who was with Plaintiff in the Emergency Department on June 21. Again, Plaintiff states Mulford is White without supporting evidence.

---

[3]   For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

- <u>Justin Peters</u>: Assistant Director of EKHCS. Peters temporarily detailed Plaintiff to a Transportation Assistant position in the Engineering Department at the Leavenworth VAMC pending investigation of the June 21 use of force.[4]

- <u>Rudy Klopfer</u>: EKHCS Executive Director/CEO. Klopfer convened an Administrative Investigation Board ("AIB") to investigate Plaintiff's June 21 use of force from a patient care and staff misconduct perspective. The AIB was comprised of an interdisciplinary team from outside the Topeka VAMC Campus. Klopfer also separately requested that an independent fact-finding analysis be conducted on the EKHCS Police Department after he learned that Plaintiff alleged Denning treated him unfairly based on his race.

- <u>William Shirah</u>: Chief of Police for VISN 15. Shirah completed the fact-finding analysis requested by Klopfer. Shirah recommended that a two-chief panel be convened to review Plaintiff's allegation that Denning permitted race-based harassment.

- <u>William Patterson</u>: VISN 15 Network Director. Patterson convened a second fact-finding panel to look at the allegations about Denning.

## 2.  Overview of Events

Most of the events occurred in 2019. The Court offers a brief description of the events below. The Court will further discuss the key events that are the subject of Plaintiff's claims in the next section.

- <u>October 28, 2018</u>: Plaintiff began employment at Topeka VAMC.

- <u>January and February 2019</u>: Plaintiff raised concerns to Denning about training, recordkeeping, and disciplinary decisions. He also raised concerns about Denning's disciplinary decisions regarding other officers. Plaintiff did not raise concerns about race- or disability-based discrimination.

- <u>April 2019</u>: Plaintiff filed a workers compensation claim for psychological damages stemming from workplace harassment. He filed with the Department of Labor, Office of Worker's Compensation ("OWCP"). He alleged two on-the-job injuries—major depressive disorder, severe with psychotic system, and post-traumatic stress disorder. Plaintiff's claim was denied at first but the denial later was overturned. The OWCP accepted Plaintiff's claim on July 14, 2022, and he currently receives compensation from OWCP. Plaintiff's discrimination and retaliation claims in this case were included in his arguments to the

---

[4]   Plaintiff alleges that Denning detailed him. But the parties stipulated in the pretrial order that Peters made the decision. Doc. 76 at 3. And evidence supports the stipulation. Doc. 80-4 at 2-3, 5-8.

OWCP. The injuries claimed here are a "mirror image" of the injuries he presented to the OWCP. Doc. 80-7 at 6.

- <u>June 6, 2019</u>: Plaintiff requested to be placed on light duty. Denning granted the request.

- <u>June 19, 2019</u>: Denning asked Feliciano to check Plaintiff's off-tour checks and missing months.

- <u>June 20, 2019</u>: Plaintiff requested to be removed from the police service due to mental and physical health issues.[5] The same day, Denning asked Feliciano to tell him when Plaintiff returned from Chicago and asked about some of Plaintiff's delegation acts.

- <u>June 21, 2019</u>: Plaintiff struck an Emergency Department patient with flashlight. He was issued a letter of reprimand, but it was later rescinded. Ultimately Plaintiff was not disciplined.

- <u>June 24, 2019</u>: Denning asked Feliciano if Plaintiff had arrived by 8:00 AM.

- <u>June 27, 2019</u>: Plaintiff received a reprimand for actions taken on May 31, June 5, and June 7 (failure to complete tasks, inappropriate comments, unauthorized absences, failure to follow proper leave-requesting procedures).

- <u>June 28, 2019</u>: Plaintiff canceled his June 20 request to be removed from police service by email.[6] The same day, Peters detailed Plaintiff to the position of Transportation Assistant at Leavenworth (Engineering Service). This is also the date of Plaintiff's initial contact with an EEO counselor. During his informal counseling (which was after this date), Plaintiff raised the following complaints:

| Bases | Claims | Dates of Occurrence |
|---|---|---|
| Color – Light Brown | Disciplianary Action – Reprimand | 06/27/2019 |
| | | 06/28/2019 |
| Race -Multiple Races | Detail – | |
| | Harassment/Hostile Work Environment (Non-Sexual) | 06/03/2019 |
| Disability - Mental | | |
| | Time and Attendance | 09/06/2019 |
| | Medical Examination (Fitness for Duty) | 09/09/2019 |

---

[5]   Plaintiff did not cite evidence supporting this fact. Doc. 87 at 8. But Defendant did not controvert it. Doc. 88 at 4.

[6]   Again, Plaintiff did not cite evidence in support, but Defendant did not controvert. Docs. 87 at 8; 88 at 4.

- <u>June 29, 2019</u>: Plaintiff wrote to Robert Wilkie, Secretary of the VA, complaining about misconduct by Denning and Plaintiff's senior leadership. Plaintiff listed five major deficiencies that he found in an audit of the department's operations. Doc 80-2. He also alleged that Denning treated him unfairly based on his race. The letter was forwarded to Klopfer, who then requested an independent fact-finding analysis be conducted about the EKHCS Police Department. Shirah conducted the analysis.

- <u>July 18, 2019</u>: Plaintiff wrote a memo to Klopfer reporting police chief management misconduct and abuse of authority.

- <u>July 19, 2019</u>: Plaintiff's June 27 reprimand was rescinded and not reissued.

- <u>July 26, 2019</u>: Shirah issued a fact-finding memo. Shirah recommended additional fact-finding about Plaintiff's allegation that Denning allowed race-based harassment to continue. Patterson then formally requested the second fact-finding analysis.

- <u>August 7, 2019</u>: Plaintiff wrote a memo to Klopfer alleging ongoing misconduct by Denning.

- <u>September 6, 2019</u>: Plaintiff learned that he was on LWOP.

- <u>September 9, 2019</u>: Plaintiff submitted a request for Advanced Annual Leave. Klopfer granted the request in the amount of 104 hours of Advanced Sick Leave and 52 hours of Advanced Annual Leave. These amounts represented the maximum Plaintiff could have earned by the end of the year.

- <u>September 9, 2019</u>: Plaintiff received a notice requiring medical examination. The annual medical exam, including a psychological assessment, is required for all VA police officers.

- <u>September 27, 2019</u>: The AIB issued a written report stemming from its investigation of Plaintiff's June 21 use of force from a patient care and staff misconduct perspective. The decision did not address any reasonable accommodation claim.

- <u>October 1, 2019</u>: The Memo on Fact-Finding for Workplace Concerns was issued, which was the second fact-finding analysis that Patterson requested.

- <u>October 7, 2019</u>: Plaintiff filed a formal complaint of discrimination, which did not include a failure-to-accommodate claim.

- <u>December 13, 2019</u>: The VA criminal investigator for the June 21 incident concluded that the level of force used by Plaintiff would have been reasonable had Plaintiff been in uniform with authorized equipment.

- <u>October 11, 2022</u>: The EEOC issued a decision and order on Plaintiff's complaint of discrimination. The EEOC considered the same four events that Plaintiff raises here.

- <u>January 23, 2023</u>: Plaintiff took disability-based retirement from the VA.

### 3. Additional Facts Relating to Four Events at Issue

#### a. May-June 2019 Communications and Reprimand

Plaintiff was late to work multiple times during the spring of 2019. Denning was aware and decided to take measures to verify whether Plaintiff arrived on time and accomplished his tasks. But Denning was in Leavenworth and Plaintiff was in Topeka, which complicated Denning's ability to make personal observations. Denning thus turned to Feliciano for help, asking her questions about Plaintiff's work attendance and performance. Feliciano was one of the only members of police staff at the Topeka VAMC who reported to Denning and not Plaintiff.

Denning issued the June 27 letter of reprimand because Plaintiff failed to complete assigned tasks, made inappropriate comments to subordinate employees, was absent from work without authorization, and failed to follow proper leave-requesting procedures. But he rescinded the letter of reprimand a few weeks letter. He elected not to take further action on the conduct described in the letter.

#### b. June 28, 2019 Detail to Engineering Service in Leavenworth

Plaintiff requested to be placed on light duty on or before June 6. Denning granted his request. But Plaintiff responded to the call for assistance from the Emergency Department with Eckhoff and Mulford on June 21. There was an intoxicated and verbally disruptive patient. During the encounter, Plaintiff struck the patient on the shin with a flashlight. Neither Eckhoff nor Mulford struck the patient with a flashlight.

Denning asked Sterba to review the incident and make recommendations. Sterba concluded that Plaintiff used unjustified force with an unapproved object. Sterba recommended further review

and action. Denning conducted his own review, reaching the same conclusion. Neither Sterba nor Denning identified use-of-force concerns with the actions of Eckhoff or Mulford.

Peters temporarily detailed Plaintiff to the Engineering Department in Leavenworth on June 28 after reviewing the reports of Sterba and Denning. He did so pending investigation and any disciplinary action. This action allowed impartial investigation of the matter without interference by Plaintiff, who was the senior supervisor in the Topeka Police Services Department. Klopfer stated that temporary details are "used by the VA when necessary to ensure the integrity of an investigation or the ability of the work unit to accomplish its mission." Doc. 80-2 at 3. Peters instructed Plaintiff not to enter the Leavenworth or Topeka VAMC Police Departments in the absence of prior approval or a police emergency. He also advised Plaintiff not to contact or discuss the investigations or surrounding subjects with police staff. The detail impacted neither Plaintiff's pay nor benefits.

Klopfer convened an AIB to investigate Plaintiff's June 21 use of force from the perspective of patient care and staff misconduct. The AIB ultimately concluded in part that:

- Plaintiff "intentionally struck the veteran on the shin."

- Plaintiff acted in an intimidating and threatening manner toward employees, creating an intimidating and hostile work environment.

- Plaintiff lacked candor, at least with respect to one fact.

- Plaintiff failed to report the use of force and he directed subordinates not to complete the reports.

- Discipline was recommended.

Doc. 80-2 at 58-61.

Klopfer also requested an independent fact-finding analysis when he learned of Plaintiff's June 29 allegations of race-based harassment. And Shirah recommended a panel to review

Plaintiff's race-based harassment allegations. Patterson convened the second fact-finding panel, which found that Plaintiff's allegations were unsubstantiated, finding "no indication of workplace violence or bullying by Chief Denning" and "no harassment by Chief Denning." Doc. 80-2 at 48-49. The panel instead noted that "Numerous staff members state that Major Harris was the harasser and bullied his staff." *Id.* at 49.

Plaintiff was issued a letter proposing discipline for the June 21 incident. But the letter was rescinded, and Plaintiff was never disciplined.

### c.      September 6, 2019 LWOP

Plaintiff's supervisor approved a request by Plaintiff for leave without pay in lieu of annual leave on September 6. Plaintiff requested advanced annual leave three days later. Klopfer granted Plaintiff's request, although he had discretion not to do so. He approved the maximum available under VA policy.

### d.      September 9, 2019 Medical Examination Notice

VA police officers are required by policy to be examined annually. The annual exam includes both physical and psychological elements. Plaintiff remained employed as a police major when he was on temporary detail with Engineering Services. His title and department remained the same. He thus remained subject to the VA's policy that required annual exams for law enforcement.

Plaintiff underwent his examination in September 2019. Defendant took no action against Plaintiff based on the exam. It did not become part of Plaintiff's performance evaluation or any disciplinary or administrative action.

11

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

A court faced with cross-motions for summary judgment "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016). Courts treat them separately; denying one does not require granting the other. *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

## III.    ANALYSIS

### A.    FECA bars Plaintiff's claims under Title VII and the Rehabilitation Act for the same events and injury he already claimed.

Plaintiff is a former federal employee. He alleges that his injuries are the result of workplace harassment and that he filed worker's compensation claims with the Department of Labor ("DOL"). He has in fact been awarded benefits for his claim for an occupational disease. Doc. 80-8 at 37. But FECA provides the exclusive remedy for work-related injuries. *See* 5 U.S.C. § 8173; *Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998). And this Court lacks jurisdiction over the Secretary of Labor's decisions about compensation for work-related injuries.

5 U.S.C. § 8128(b); *Miller v. V.A. Med. Ctr.*, 12 F. App'x 766, 768 (10th Cir. 2001). Where "the Court is powerless to review OWCP's decision directly, it cannot do so indirectly by fashioning relief under the Rehabilitation Act and Title VII." *Pueschel v. Chao*, 357 F. Supp. 3d 18, 25 (D.D.C. 2019). That said, there are situations in which a Title VII discrimination or retaliation claim may be brought as an independent action that is not subsumed by FECA. *See, e.g.*, *Richmond v. Potter*, 171 F. App's 851, 852 (D.C. Cir. 2005); *Miller v. Bolger*, 802 F.2d 660, 667 (3d Cir. 1986); *see also Meester v. Runyon*, 149 F.3d 855, 858-59 (8th Cir. 1998) (Heaney, J. dissenting) (collecting cases).

Plaintiff's position is confusing. Plaintiff first contends:

> The DEFENDANT has raised Federal Employees['] Compensation Act (FECA) as a defense, however, the [PLAINTIFF's] injuries are not at issue with this court. Furthermore, this court does not have jurisdiction over the employment injuries due [to] FECA, however, this Court does have jurisdiction to award damages and future damages due to the DEFENDANT['s] unbearable discriminatory, malicious and/or gross negligence (severe and pervasive) harassment, which caused the PLAINTIFF to suffer monetarily, forced [him] into medical retirement causing economic and monetary damage, and permanent physical, and mental injuries for life; to include future medical expenses the PLAINTIFF should not have to [bear] alone, which this court does have jurisdiction over.

Doc. 87 at 1-2. But Plaintiff later states that Defendant's "unlawful/gross-misconduct was so severe and pervasive that the actions resulted in PLAINTIFF['s] 'lifetime injuries,' which are covered under FECA, and not at issue with this court." *Id.* at 3. Although unclear, it seems that Plaintiff claims that a jury should compensate him for the same injuries as OWCP.

At least some of Plaintiff's alleged claims and injuries under Title VII and the Rehabilitation Act fall under FECA. Frankly, it is difficult for the Court to determine which do and which do not. OWCP Branch of Hearings and Review Decision details Plaintiff's claims before the DOL. The decision makes clear that Plaintiff raised the same claims and injuries before

the DOL that he does here. *See, e.g.*, Doc. 80-8 at 6, 8, 13, 19, 25 (being subjected to unwarranted investigation and watched by subordinates); 9, 13, 19, 26 (being detailed without justification); 13, 25 (received letters of reprimand that were withdrawn). And during Plaintiff's deposition, he was asked, "Is there any difference in how you've described your physical and mental injuries in the office of worker's compensation claims that you've made, and the physical and mental injuries that you've discussed in your Complaint of Discrimination here?" Doc. 80-7 at 6. Plaintiff answered, "No, sir. They're mirror image." *Id.* But the OWCP opinion also specifically contains findings that the alleged multiple investigations and Plaintiff's detail to Engineering were "not factors of employment." Doc. 80-8 at 32-33. In other words, OWCP found that Plaintiff was not injured in the performance of duty by these events. And the statutory test for FECA coverage is whether an employee was injured "while in the performance of his duty." 5 U.S.C. § 8102(a). Therefore, at least these two events appear to fall outside of FECA. OWCP also specifically found that the June 27 reprimand letter (later rescinded) was a factor of employment. Doc. 80-8 at 32.

Federal courts often stay proceedings pending a final decision of the Secretary about whether an employee was injured in the performance of duty. *See Tarver v. United States*, 25 F.3d 900, 902-903 (10th Cir. 1994). But no stay of proceedings is necessary here. The Secretary has already decided that plaintiff was injured (in some way) in the performance of duty and has compensated Plaintiff under FECA. At a minimum, the OWCP accepted that the June 27 reprimand letter was a "factor of employment." Doc. 80-8 at 32. The Court does not know which of Plaintiff's theories the OWCP eventually accepted. *See id.* at 37 (simply accepting Plaintiff's claim for an occupational disease). But the injuries are the same claimed here. *See id.* (identifying "major depressive disorder, recurrent, severe with psychotic symptoms" and "post-traumatic stress disorder, unspecified" as Plaintiff's diagnosed conditions qualifying Plaintiff for compensation);

Doc. 80-7 at 6 (Plaintiff's "mirror-image" characterization). And courts cannot review the Secretary's decision and must dismiss the action when FECA applies. *Tarver*, 25 F.3d at 902-903. Dismissal of Plaintiff's claims is mandatory when they fall under FECA.[7]

The bottom line is that Plaintiff bears the burden to establish that this Court has subject matter jurisdiction over his claims. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999). Plaintiff's Title VII and Rehabilitation Act claims are not, as Defendant contends, categorically barred because of FECA. The OWCP found that the alleged multiple investigations and Plaintiff's detail to Engineering were not factors of employment. But it found that the June 27 reprimand was a factor of employment. Plaintiff does not argue or present evidence showing the Court has subject matter jurisdiction over his claims arising out of the other two events (the September 6 LWOP or the September 9 notice of required medical exam). Because it is his burden, the Court dismisses the Title VII and Rehabilitation Act claims arising out of the June 27 reprimand, September 6 LWOP, and September 9 notice of required medical exam, without prejudice for lack of subject matter jurisdiction. The Court addresses the merits of Plaintiff's claims arising out of the multiple investigations and the detail to Engineering later in this order.

## B.    Plaintiff failed to exhaust his workplace harassment claim for whistleblowing.

The Civil Service Reform Act ("CSRA") contains claim procedures for most government employees alleging prohibited personnel practices. *Steele v. United States*, 19 F.3d 531, 532 (10th Cir. 1994). Employees who allege violation of the Whistleblower Protection Act ("WPA") must follow the CSRA's procedures, as the CSRA exclusively offers relief for WPA violations. *See Pretlow v. Garrison*, 420 F. App'x 798, 801-803 (10th Cir. 2011) (citing *Richards v. Kiernan*, 461

---

[7]    Plaintiff also seeks to bring his race-based discrimination claim under § 1983 and 29 C.F.R. § 1614.101(b). Neither provide a cause of action in this case. Section 1983 applies to state actors, not federal actors. *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). And 29 C.F.R. § 1614.101(b) does not create an independent Title VII cause of action. *See Rockefeller v. Abraham*, 58 F. App'x 425, 428 (10th Cir. 2003).

F.3d 880, 885 (7th Cir. 2006) (collecting cases)). Plaintiff's third claim is for harassment because of whistleblowing. He does not specify that it is under the WPA, but the Court affords him the favorable construction that it is a WPA claim.

An employee asserting a whistleblowing claim must either (1) report his allegation to the Office of Special Counsel ("OSC") or (2) appeal directly to the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. §§ 1214(a)(3), 1221(a), 7511-7514. The employee may then appeal the MSPB decision to the Federal Circuit or any court of appeals of competent jurisdiction. *Id.* § 7703(b)(1)(B); *see also Baca v. Dep't of the Army*, 983 F.3d 1131, 1137 (10th Cir. 2020).

There is no record evidence that Plaintiff pursued his claim for harassment based on whistleblowing before the OSC or the MSPB.[8] And even if he had, Plaintiff's recourse would be to appeal to the Federal Circuit or another appellate court—not a district court.[9] The CSRA preempts Plaintiff's whistleblower claim and the Court grants summary judgment on the claim for lack of jurisdiction.[10]

### C. Plaintiff failed to exhaust any claim for failure to accommodate.

Plaintiff faces a similar problem with a failure-to-accommodate claim. A federal employee alleging disability discrimination, including failure to accommodate, must follow specific administrative procedures to exhaust administrative remedies before filing suit. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020); *see also* 29 C.F.R. § 1614.105(a)(1) (identifying deadlines

---

[8]  Plaintiff did challenge a reduction in pay grade and pay before the MSPB and prevailed on that claim. *See Harris v. Dep't of Veterans Affairs*, 2022 WL 1719564 (MSPB 2022).

[9]  The Supreme Court recently held that the CSRA's appeal deadline is not jurisdictional. *Harrow v. Dep't of Defense*, 144 S. Ct. 1178, 1181 (2024). The issue here is not one of timing, but of failure to use the correct procedure at all.

[10]  Plaintiff suggests in his response brief that he was subjected to a hostile work environment based not only on his whistleblowing, but also because of his color, race, and disability. Doc. 87 at 3. But Plaintiff did not preserve a hostile work environment claim based on anything but whistleblowing. Plaintiff is bound by the claims alleged in the pretrial order. He may not expand them now. *Moral v. PHH Mortg. Corp.*, 2023 WL 4351027, at *2-4 (D. Kan. 2023), *aff'd*, Case No. 23-3123 Doc. 11097792 (10th Cir. 2024).

for contact with an EEO counselor). The employee must exhaust his administrative remedies for each discrete instance of failure to accommodate. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018). Failure to exhaust is an affirmative defense. *Id.* at 1185.

Plaintiff made a formal complaint of discrimination and engaged in EEO counseling. But he did not raise a reasonable-accommodation claim in either. Plaintiff alleged the following claims: (1) disciplinary action - reprimand, (2) detail, (3) harassment/hostile work environment, (4) "time and attendance," and (5) medical examination. He alleged mental disability as one of the three bases. But he did not allege facts suggesting that he sought accommodation for a disability or that Defendant denied any request for accommodation. Failure-to-accommodate is a separate and distinct claim that would not reasonably grow from the claims Plaintiff raised.

The Court grants summary judgment on Plaintiff's failure-to-accommodate claim because he failed to exhaust his administrative remedies.[11]

### D.    Plaintiff fails to show a prima facie case for his remaining Title VII and Rehabilitation Act Claims.

The Court briefly addresses the merits of Plaintiff's remaining Title VII and Rehabilitation Act claims. The Court has already dismissed his claims based on a few of the events for lack of subject-matter jurisdiction (the June 27 reprimand, September 6 LWOP, and September 9 notice of required medical exam). Plaintiff fails to establish a prima facie case for his remaining Title VII and Rehabilitation Act claims (based on the alleged multiple investigations and the detail to Engineering).

The Court follows the *McDonnell Douglas* burden-shifting framework because Plaintiff does not offer direct evidence of discrimination or retaliation. *Young v. Physician Office Partners,*

---

[11]   The Court is also unclear about what, if any, accommodation request Plaintiff made. This claim alternatively fails on its merits because Plaintiff has not identified any evidence in support.

*Inc.*, 2020 WL 1446911, at *11 (D. Kan. 2020). The Court need not proceed past Plaintiff's initial burden to establish a prima facie case for any of his remaining claims. A prima facie case for discrimination under Title VII requires a showing that: (1) the victim belongs to a protected class and (2) suffered an adverse employment action (3) under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). A prima facie case for discrimination under the Rehabilitation Act requires a showing that the victim suffered an adverse employment action because of his disability.[12] *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017) (ADA, which uses the same standards as the Rehabilitation Act, *see Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010)). And a prima facie case for retaliation under either statutory scheme requires that (1) he engaged in protected activity; (2) he suffered an adverse employment action during or after her protected activity, which a reasonable employee would have found materially adverse; and (3) there was a causal connection between the protected activity and the adverse action. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013); *see Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967, 976 (2024) (suggesting that the "materially adverse" standard remains valid in the retaliation context).

The Court does not address all of the requirements below. Instead, the Court focuses on the action and causation requirements. The Court first addresses the "adverse employment action" and "adverse action that a reasonable employee would have found materially adverse" requirements. The Court then turns to the inference of discrimination and causal connection

---

[12] Another problem for Plaintiff is that the Rehabilitation Act does not allow claims for monetary damages against the federal government. *Lane v. Pena*, 518 U.S. 187, 191-97 (1996); *Sanders v. Shinerki*, 2012 WL 5985469, at *4 (D. Kan. 2012) (dismissing for lack of subject matter jurisdiction because Plaintiff did not seek injunctive relief on her Section 504 claim). Plaintiff seeks mostly damages, but also asked for return of his "Police Major Retirement Credentials and Badge." Doc. 76 at 13.

requirements. Plaintiff does not present a coherent, targeted argument supported by admissible evidence for either.[13]

### 1.      Adverse Employment Action/Would Have Found Materially Adverse

Plaintiff's disparate treatment claims for the alleged multiple investigations are missing an adverse employment action. An adverse employment action need not cause significant, material, or serious injury to be actionable. *Muldrow*, 144 S. Ct. at 975 n.2. But there must be some "'disadvantageous' change in an employment term or condition." *Id.* at 974. The employee must be treated worse because of his race or other protected trait. *Id.* Speculative harm is insufficient, particularly when it is presented through conclusory allegations. *See Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1208 (D. Kan. 2003) (decided before *Muldrow*, but *Muldrow* did not lower the Title VII bar so far as to permit speculative harm).

There simply is no evidence in the record that the alleged multiple investigations constituted a disadvantageous change in an employment term or condition. First and foremost, there is no admissible evidence that Denning requested that employees besides Feliciano provide him with information about Plaintiff.[14] Plaintiff's conclusory, unsupported allegations are insufficient. Neither is there any admissible evidence of an investigation without explanation. What is left is the fact that Feliciano recorded Plaintiff's work and attendance. And Plaintiff has not argued or shown how this constituted a disadvantageous change in an employment term or

---

[13]   Defendant challenges much of Plaintiff's evidence for lack of foundation and inadmissibility. And Plaintiff does not explain how it can be presented in a form that would be admissible. *See* Fed. R. Civ. P. 56(c). He repeatedly refers to what appears to be an incomplete collection of excerpts of purportedly-initialed statements from various sources. But he lays no foundation for them, provides no context for them, or otherwise explains how they are capable of being presented at trial.

[14]   The Court notes that the OWCP found the following event did not occur: "Chief Denning instructed several other co-workers (Howell, Eckhoff, Wadja) to follow the claimant, monitor him and report back on his activities." Doc. 80-8 at 34.

condition. No reasonable jury could conclude that the alleged multiple investigations were an

adverse employment action, even under the more lenient standard of *Muldrow*.[15]

Similarly, Plaintiff's retaliation claim based on the alleged multiple investigations is

missing the materially adverse action.[16] A plaintiff asserting a retaliation claim must allege conduct

"that would have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Braxton v. Nortek Air Sols., L.L.C.*, 769 F. App'x 600, 606 (10th Cir. 2019)

(quotation marks and citations omitted). Courts use a "case-by-case approach, asking whether the

record contains objective evidence of material disadvantage or merely the bald personal

preferences of the plaintiff." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1185 (10th Cir. 2009).

Again, Plaintiff wholly fails to meet his burden. There is no evidence suggesting that having one's

attendance and work recorded by Feliciano rises to the level of an action that a reasonable

employee would consider materially adverse. *See Lewis v. Wilkie*, 909 F.3d 858, 869 (7th Cir.

---

[15] Even if the Court did not dismiss Plaintiff's claim about the June 27 reprimand for lack of subject matter jurisdiction, it would grant summary judgment on the merits. The reprimand would not be sufficient to constitute an adverse employment action, even if it hadn't been rescinded. *See Walker v. Wormuth*, 2021 WL 5113679, at *7 (D. Kan. 2021) (citing multiple cases for the proposition that incidents of written and verbal counseling are generally too inconsequential to be adverse actions). But the written reprimand <u>was</u> rescinded. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1151, n.7 (10th Cir. 2005) (noting that "[a]n employer's 'decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action.'"). The same is true of the September 6 LWOP event. Plaintiff was approved to take LWOP on September 6. Plaintiff requested to take Advanced Annual Leave three days later. And Klopfer approved 156 hours of advanced leave. No reasonable jury could conclude that Plaintiff suffered an adverse employment action from the original placement on LWOP at all. In fact, the time records and declaration of Silva indicate that Plaintiff himself requested LWOP. Doc. 80-5 at 3, 6-7. And the September 7 notice of medical exam fares the same. VA policy requires police officers to undergo an annual medical exam and psychological assessment. Plaintiff remained employed as a police major when he was temporarily assigned to the Engineering Service. His conclusory, unsupported allegations that he did not are insufficient to controvert the personnel records showing no change in position. There can be no adverse employment action in being required to comply with policy. And in any event, Plaintiff has not shown any disadvantageous change in an employment term or condition from participating in the examination.

[16] Plaintiff identifies his Title VII retaliation claim as one based on whistleblowing. Doc. 76 at 10. But to be actionable, any whistleblowing must be related to a protected class. *See Tracy v. Vail Resorts, Inc.*, 2022 WL 16557393, at *4 (10th Cir. 2022); *Blue v. Macy's Herald Square*, 2013 WL 3717777, at *3 n.5 (S.D.N.Y. 2013). Title VII prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Court therefore does not consider Plaintiff's general acts of whistleblowing about training, recordkeeping, and disciplinary decisions. Instead, the Court only addresses any complaints Plaintiff made related to the treatment of a protected class.

2018) (knowledge that co-workers were instructed to monitor the plaintiff would not dissuade a reasonable employee from engaging in protected activity). Plaintiff fails to show how these actions resulted in objective evidence of a material disadvantage.[17]

### 2. Inference of Discrimination/Causal Connection Requirements

Even if Plaintiff could establish that his detail to Engineering Service was an adverse employment action or that a reasonable employee would have found it materially adverse, he fails to connect that action to his race or disability or any complaint he made about treatment based on his race, disability, or protected activity. All of Plaintiff's claims require some level of causation. *PVNF, L.L.C.*, 487 F.3d at 800 (Title VII); *Williams*, 849 F.3d at 896 (ADA/Rehabilitation Act); *Hansen*, 844 F.3d at 925 (retaliation). But this element of Plaintiff's prima facie cases is also missing. Plaintiff was detailed on June 28, 2019. The record contains no evidence from which a reasonable jury could find a race- or disability-based connection. There is no evidence of preferential treatment for similarly situated employees, race-based comments, or an awareness of Plaintiff's disability.[18] Neither is there any evidence that a decision-maker knew that Plaintiff engaged in any protected EEO activity before Plaintiff contacted the EEO counselor on June 28 or wrote the letter to the VA agency head on June 29. To the contrary, Denning, Klopfer, and Peters each stated via declaration that they were not aware that Plaintiff had made any allegations of unfair treatment based on race prior to June 29. Docs. 80-2 at 3, 80-3 at 5, 80-4 at 3. This evidence is uncontroverted. There is no evidence from which a reasonable jury could find that Plaintiff's detail to Engineering was connected to his race, disability, or complaints about treatment because

---

[17]   The same goes for the later-rescinded reprimand. Plaintiff has identified no disadvantage at all. Neither has he identified one for his LWOP, which he personally requested, or the required medical examination.

[18]   The earliest Plaintiff claims any management officials were aware of Plaintiff's disability is August 21, 2019. Doc. 73 at 51-61.

of his race or disability.[19] Plaintiff has not pointed to evidence that gives rise to an inference of prohibited discrimination.

For these reasons, Plaintiff fails to establish a prima facie case for his remaining Title VII and Rehabilitation Act claims.[20] The Court grants Defendant summary judgment on this basis.

## IV.     CONCLUSION

The Court understands that Plaintiff's experience working at the VAMC may not have been ideal. And it appears that Plaintiff reported various troubling practices in an effort to ensure a better working environment and improve the VAMC's services. But either Plaintiff has pursued (and received) remedies through other means or he should have done so. And at least three of the four events Plaintiff complains of now simply do not rise to the level of an actionable employment action. And to the extent any of them do, Plaintiff has not made the required connection to a protected status or activity. There is not a remedy in this Court for the actions Plaintiff complains of under the legal theories he pursues.

The Court denies Plaintiff's summary-judgment motion, amended motion, and request to file a surreply. The Court grants Defendant's summary-judgment motion because some of Plaintiff's claims are barred by the Federal Employee's Compensation Act ("FECA"), others are not administratively exhausted, and the uncontroverted evidence shows that Plaintiff fails to state a prima facie case for his remaining Title VII and Rehabilitation Act claims.

---

[19]   Again, the same analysis applies to all of the events identified.

[20]   Defendant submitted non-discriminatory reasons for its decisions, *see* Doc. 80 at 37, and Plaintiff fails to point to evidence of pretext. Plaintiff titles a section of his response brief "Pretext Discussion of Harassment in Support of Plaintiff." Doc. 87 at 27. Plaintiff purports to address both pretext and causation under this heading. But Plaintiff does nothing more than assert that pretext and causation exist. He does not take the next step and connect his assertions to admissible evidence. Even if the Court engaged in the full *McDonnell-Douglas* analysis, Plaintiff's claims would not survive summary judgment.

THE COURT THEREFORE ORDERS that Plaintiff's motion for leave to file a surreply (Doc. 92) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's summary-judgment motion (Doc. 79) is DENIED AS MOOT, and his amended summary-judgment motion (Doc. 82) is DENIED.

THE COURT FURTHER ORDERS that Defendant's summary-judgment motion (Doc. 80) is GRANTED. Plaintiff's Title VII and Rehabilitation Act claims based on the June 27 reprimand, September 6 LWOP, and September 9 notice of required medical exam are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Likewise, his WPA retaliation claim and his claim for failure to accommodate are DISMISSED WITHOUT PREJUDICE for failure to exhaust. The Court GRANTS SUMMARY JUDGMENT on Plaintiff's remaining Title VII and Rehabilitation Act claims based on the alleged multiple investigations and the detail to Engineering.

The case is closed.

IT IS SO ORDERED.

Dated: June 14, 2024                              /s/ Holly L. Teeter
                                                  HOLLY L. TEETER
                                                  UNITED STATES DISTRICT JUDGE